Good morning, Your Honors. Kevin Little on behalf of the appellant Donna Hoffman. I'd like to reserve just two minutes for rebuttal, if possible, and I'd also like to make a record of the fact that Ms. Hoffman herself is here present in court as well. Your Honors, the primary issue in this appeal is that the district court substituted its lay judgment for the medical judgment of an expert witness and decided as a matter of law that her opinion was unacceptable. The district court specifically rejected, and it uses the word rejected in its opinion, the opinion of Dr. Peggy Goldman, the plaintiff's infectious disease expert, that early goal-directed therapy in the context of this case was not exclusively treatment. It was also a screening tool. In its summary judgment opinion, and I think it's also worth noting that this is not an argument that was made by the defendants, nor one prior to dismissal that the plaintiff ever had an opportunity to rebut. The court found that as a matter of law, that simply could not be. We've cited the court to the administrative materials pertaining to EMTALA, which shows specifically that there is no bright line between what constitutes screening and what constitutes treatment for purposes of EMTALA. It is a fact-specific analysis. Under these circumstances, given that it is a fact-specific analysis, and there was no reasonable basis for the district court as a matter of law rejecting an expert's opinion and substituting its own lay judgment for her expert assessment. That in and of itself, that error is sufficient to warrant reversal of the summary judgment that was found by the district court. Further, the district court summary judgment ruling belies the record in another important respect. The district court found that there was no evidence that a complete blood count would have changed the issue in this case. However, Dr. Goldman specifically testified, as part of the record shows her deposition, and this is excerpts of record tab 8, pages 59 through 60 and 72 through 73, that a complete blood count alone would have, under these circumstances, shown an elevated blood count and would likely have resulted in her admission to the hospital and the other components of early goal-directed therapy. That also was the district court found, to the contrary of that testimony, that there was no evidence in the record on that issue. With respect to the other issues of summary judgment, I think they all show very clearly that the district court did not review the record in this case in the light most favoring the plaintiff, as he was obligated to do. And instead, on very crucial points, either made findings that were contrary to the disputed record or substituted its judgment for certain crucial points that were apparent in the record and even undisputed. Unless there are further questions or inquiries regarding the summary judgment aspect of this case, I'd like to move on to some of the other procedural aspects, specifically the district court's decisions and handling of post-trial issues regarding expert witnesses and motions for summary judgment. The district court permitted the defendant to name not one, but two expert witnesses after the trial. This Court's law and holdings in the context of modifying pretrial orders is that a finding of willfulness militates any finding of manifest injustice for purposes of modifying a pretrial order. The record here is very clear. This was not a mistake by Memorial Medical Center. This was a choice that it made not to retain an expert. It had experienced counsel. It certainly had the resources to do so. It simply failed to. What's our standard of review for the district court's decision whether to modify the pretrial order and permit the addition of Dr. Joseph and the other person? Your Honor, it is a manifest injustice standard that is reviewed for an abuse of discretion. So it's not enough for us to conclude that we might have made a different choice. We would have to find that it was completely outside the realm of appropriate discretion. That is correct, Your Honor. And I think the way in which this was outside the role of appropriate discretion is that the district court found in the absence of a record that this was not willful. And I think the most glaring example of that was with respect to the second expert that it allowed. After the first expert said that he couldn't or was unable to or unwilling to comply with Rule 26, the judge allowed another expert to be designated. Now, at that point, the defendants were already three months past the deadline for designating the first expert. Then they, without any factual basis, they simply came into court and said something that was extremely flimsy, Your Honor, that this expert could not provide a list of his cases that he worked on for the last four years. As you know, Rule 26 only requires substantial justification. If they really could prove that, which they never were required to do, they could have been excused and used that same expert. I submit, Your Honor, I was born at night, but not last night. That justification made no sense whatsoever. The district court bought it and didn't even allow the plaintiff to do the discovery to find out exactly what the situation was. That is the abuse of discretion that warrants reversal. With respect to the summary judgment issue, I think the other abuse of discretion that's prominent is that the district court, even though it had allowed, it had denied the Rule 50 motion on causation grounds, it allowed a further summary judgment motion based on its own anticipation of what a further expert might opine. No offer of proof was made by the defense. No, either in its moving papers or in form of declaration or anything. The court simply assumed that the expert's opinion was going to be supportive of this and provide a new record. No offer of proof was ever made. That is also an abuse of discretion. With respect to the other abuse of discretion, I think the other abuse of discretion is that essentially the court ruled without any record. It made its own assumptions that there was going to be an expert who could come up with a contrary opinion when that was never even proposed by the parties. With respect to the issue of experts, it simply can't be enough for a party to come into court after a trial and say, you know what, if I had another expert, my defense would be a lot better. And I know that we had a scheduling order with which we had to comply, but there's going to be another trial now, so let's just wipe the slate clean. That simply cannot be enough for this court to countenance what occurred in this case. With respect to the evidentiary issues, and I think this shows what further error, and I just would want to briefly comment that the record of the trial shows that the defendant's pattern of not abiding by the pretrial order was very apparent in this case. Even in connection with the original trial, they didn't name a nurse as a witness in the pretrial order. They hadn't provided discovery, even though it was requested regarding that nurse. And yet they were permitted to call this nurse in rebuttal at trial. This nurse that they claimed they had no information regarding her whereabouts, all of a sudden she appears on either the last or the second or last day of trial to testify. When the defense objected, I mean, when the plaintiff objected that we hadn't had a chance to depose her, the Court said that it was for rebuttal purposes. However, there are multiple nurses working in the ER. The Court itself, at tab 22, page 664, says, based on the offer of proof, this is not rebuttal. But nonetheless, it goes on and allows it as rebuttal. It's error in the clearest form. And furthermore, and I think what was perhaps even more serious error in terms of the  evidence, is that there were some MTALA-compliant logs that existed. They hadn't been produced into discovery despite their being requested. They came on the last day of trial and wanted to put this evidence in the record. And they represented to the Court that these are records that are maintained in regulatory compliance with MTALA. And that's at tab 22, page 643 to 644. However, it came out during the examination that these records were not being kept in compliance with MTALA. They were generated the weekend before during the course of trial. Counsel, if we were to agree with your very first argument, that summary judgment was improper, would we have to reach any of the remaining more procedural issues? And if so, which ones and why? Your Honor, I think that this is an opportunity for the Court to clarify what compliance with a pretrial order means. And I think that we often Let me just tell you that we often decline to take unnecessary opportunities, that our role is to decide cases and controversies. And so I guess in a theoretical sense, if you were to obtain reversal and remand on the merits of the summary judgment motion, what else would we have to decide? Not what we'd have an opportunity if we wanted to, but what else would we have to decide? I think the issues regarding the second of the two experts that was permitted by the Court, because that still could return to prejudice the plaintiff on a retrial, as well as the discovery noncompliance with the But if there's a retrial, wouldn't there be a new pretrial order and everything would kind of start anew anyway? That's correct, but my understanding would be of the law of the case doctrine. If we brought it up on appeal and it was unchanged, then Well, I know that, but doesn't everything I guess my question is, doesn't everything that happened previously pass out of the picture and there's just a new trial from the get-go so that whatever happened the last time is just interesting history, but everybody could have new experts, new witnesses, new pretrial order? I mean, is that at least theoretically possible? Your Honor, the district court, I believe, would have to rule to further modify the pretrial order to accomplish that. Okay. I understand. I think that the normal presumption is, is that when you have a retrial, you don't start from scratch. Okay. And so I think the second expert issue and the two evidentiary issues, since they could potentially prejudice the plaintiff upon retrial, that the Court, we would ask that the Court address those as well. I'll reserve the remaining of your time. Thank you, Your Honor. Okay. Thank you. I'll hear from Ms. Krieger. Good morning. My name is Lara Krieger from Greenis, Martin Stein in Richland. I'm here on behalf of Could you speak a little more into the microphone, please? Okay. Thank you. Yes, that's better. I'm here on behalf of Memorial Medical Center, and I want to respond to some of Mr. Little's points. The first would be in reference to the CBC. Mr. Little has represented both this morning and in his briefs that there is some evidence in the record that, in fact, plaintiff's expert witness, Dr. Goldman, said that a CBC itself would lead to early goal-directed therapy. Well, she didn't say it in exactly those words, but she did say that it was the results more likely than not would have been abnormal, and that an abnormal CBC would have resulted in the earlier administration of antibiotics and earlier hospitalization. So she didn't connect the CBC results with the specific phrase that you've used. But doesn't her testimony permit a reasonable jury to find that the CBC, which is clearly a screening tool, would have enabled a better outcome? Well, I would answer that with two different answers. The first is I actually read Dr. Goldman's testimony differently. She said that the abnormal CBC for the white blood cell count could be indicative of a bacterial infection, but it could also be indicative of something else going on. But we have to, on summary judgment, which this is, whether rightly or wrongly, take every inference in favor of the plaintiff, which is the non-moving party. And so you're wanting to take the most favorable parts of Dr. Goldman's testimony for your side, but when we decide it, don't we have to look at it most favorably to their side? Yes, and that leads me into my second answer to the question, which is even assuming that Dr. Tonnemacher, who was the screening physician, had done everything correctly, had given her the CBC, had administered the early goal-directed therapy within the 16-hour window. Dr. Goldman's own testimony, her own statistics, show that there is not, it was not more likely than not that she would have a favorable outcome. I'm looking at page 67 of her deposition. The physical condition of the patient was good enough at this time that if antibiotics had been given, more likely than not, it would have been able to reverse the systemic inflammatory response syndrome from taking hold. So it would have changed her outcome. Well, she did say that often. She used that magical language. But when you look at the trial testimony, and I'll give you the site numbers, at ER 468, 469, 472, 585, and 586, she testifies that there is a 30 percent chance of an early sepsis patient not going into severe sepsis with this intervening treatment. Then on ER TAP 22 at page 470, she says that an early sepsis patient who does not receive this therapy has a 46 percent chance of not developing severe sepsis. So that means that there's a 16 percent chance that an early sepsis patient will have a better outcome. This sounds like a great jury argument. I don't understand why this is summary judgment material, though. I would respectfully disagree to the extent that this is Dr. Goldman's best shot. This is in some ways an unusual summary judgment posture, because we did go through a whole trial which ended with the hung jury. So what we have here is Dr. Goldman's best testimony. And the best that she could come up with was that there's a 16 percent difference. And under California causation rules, which this case is governed by, there has to be 50 percent plus to get over the more probably than not standard. Here, with that 16 percent, all we have is a possibility. And that's just not enough. The second point that I wanted to move on to was the district court's rejection of Dr. Goldman's testimony that early goal-directed therapy constitutes screening as opposed to stabilization treatment. Basically, plaintiff's argument seems to be that any time a nonmoving party comes forward with expert testimony saying, hey, we possibly win, that summary judgment would never be appropriate, and that just cannot be right. The district court is able to look at an expert's testimony and decide whether it is legally correct, and we submit that the district court did the absolutely right thing here. In your view, if we were to disagree with you on the summary judgment causation question, do you agree with opposing counsel that there are some issues that still must be decided in addition to that? No, it doesn't seem that there would be anything that needs to be decided, that the summary judgment we submit would be incorrectly reversed. But if it were reversed and would go back, it's as if the trial never happened, that there was a mistrial, so there was no trial, then there was a summary judgment. So they can bring in more experts, you can bring in more experts, everybody can just... To be honest, I haven't researched that question, so I can't give a definitive answer. Okay. The next point that I would make would have to do with plaintiff's argument somehow equating what defense counsel didn't do, oversights, potential carelessness in terms of the expert witness designation, and somehow equating that with willfulness. In his reply brief, they indicate that willfulness somehow means voluntary. I suppose in some circumstances willful could mean voluntary, but from some research that I did, it seems pretty clear that in this context willfulness means something that is not accidental or is not careless. And in this case, it does appear that the defense counsel possibly was careless, but there is no evidence of bad faith. The district court looked at that very carefully, and we submit that there is no abusive discretion here. The same goes for the discovery in connection with the first expert witness, Dr. Joseph. Mr. Little pretty much has, I think, missed the relevant point here, which is that the exceptional circumstances provision of 26B4B applies here, and that means that you only get discovery from a withdrawn expert to the extent that there are exceptional circumstances, to the extent that there's no possible way to get at the facts underlying that expert's opinion. That provision is not simply, well, we want to know what that expert was going to say. Hey, it could be helpful to us. That's not what that rule is about. On that, I would submit, unless the Court has any further questions. I don't believe that any of us has any further questions for you. Thank you. Mr. Little, you have some rebuttal time remaining. Thank you, Your Honor. I would just like to point out on the issue of Dr. Goldman's CBC-related causation opinion, I guess the best singular statement of that appears in her deposition on page 60, which is tab 8 to the excerpts of record, and it says, counsel questioner, I understand that you said that the CBC should have been done for the reasons you stated, and that it had been done, it likely would have shown changes, and I assume you're also saying with those changes that she would have been put on antibiotics and placed in the hospital, and I assume that's your opinion. Correct answer, yes. I think that's the best, most concise statement of what her assessment was regarding the CBC. With respect to the issue of exceptional circumstances, and this will be my final point, it simply cannot be that, in this context of the situation, that an opposing party cannot get discovery relevant to a procedural question simply because it's a withdrawn expert. The issue here was there was no potential of using Dr. Joseph as a trial judge. As a trial witness, it was just merely to make a record in support of a party's motion, a position on a procedural motion, a discovery motion. And based on the record here, all appearances were that there was something amiss, because even if Dr. Joseph says he couldn't provide a list of cases, that's suspicious. No more for them the reason that you have to do that in State court as well. So it just, under Code of Civil Procedure 2034, be something. So it just didn't pass muster as a credible explanation. Thank you, counsel. The case just argued is submitted, and we thank both counsel for helpful arguments.
judges: Tashima, Graber, Bybee